## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**UNITED STATES OF AMERICA**

v.

**MICHAEL SCOTT BURTON**
 a/k/a "Scott Burton"
**MARIE ANN SMITH**
**BRADLEY D. POUNDS**
 **and**
**HEATHER E. POUNDS**

_____/

**SEALED**
**INDICTMENT**

$3 \colon 18 \, cr \, 60 / RV$

**THE GRAND JURY CHARGES:**

## COUNT ONE

### A. INTRODUCTION

At all times material to this Indictment:

1.    TRICARE was a federally funded medical benefits program provided by the federal government to help pay for civilian medical care rendered to uniformed services personnel and their dependents, retired uniformed services personnel and their dependents, and dependents of deceased uniformed services personnel.

2.    TRICARE was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b) that affected commerce, as that term is used in Title 18, United States Code, Section 1347.

Returned in open court pursuant to Rule 6(f)

_____
Date    Jun 11 2018

_____
United States Magistrate Judge

3. TRICARE provided coverage for certain prescription drugs, including certain compounded drugs, which were medically necessary and prescribed by a licensed physician. Express Scripts, Inc. ("Express Scripts") in St. Louis, Missouri, administered TRICARE's prescription drug benefits.

4. TRICARE beneficiaries could fill their prescriptions through military pharmacies, TRICARE's home delivery program, network pharmacies, and non-network pharmacies. If a beneficiary chose a network pharmacy, the pharmacy would collect any applicable co-pay from the beneficiary, dispense the drug to the beneficiary, and submit a claim for reimbursement to Express Scripts. Express Scripts would then adjudicate the claim and reimburse the pharmacy. Payment for the prescription was either mailed in the form of a check or electronically sent to the pharmacy or a third party designated by the pharmacy. To become a network pharmacy, a pharmacy agreed to be bound by, and comply with, all applicable state and federal laws, specifically including those addressing fraud, waste, and abuse.

5. In general, "compounding" is a practice in which a licensed pharmacist, a licensed physician or, in the case of an outsourcing facility, a person under the supervision of a licensed pharmacist, combines, mixes, or alters ingredients of a drug or multiple drugs to create a drug tailored to the needs of an individual patient. Florida Statutes, Section 465.003(18) defines compounding as "combining, mixing, or altering the ingredients of one or more drugs or products to

2

create another drug or product." The State of Florida regulates pharmacies located in the state. Compounded drugs are not required to be approved by the Food and Drug Administration ("FDA"). Therefore, the FDA does not verify the safety, potency, effectiveness, or manufacturing quality of compounded drugs.

6. Compounded drugs may be prescribed by a physician when an FDA-approved drug does not meet the health needs of a particular patient. For example, if a patient is allergic to a specific ingredient in an FDA-approved medication, such as a dye or a preservative, a compounded drug can be prepared excluding the substance that triggers the allergic reaction.

7. Burklow Pharmacy, Inc. ("Burklow Pharmacy") was a pharmacy registered in the State of Florida with a principal place of business in Pace, Florida. Burklow Pharmacy was originally incorporated in Florida in or about May 1997. Burklow Pharmacy had a national provider identification ("NPI") number. Burklow Pharmacy was a network pharmacy with TRICARE.

8. Physician Specialty Pharmacy, LLC ("Physician Specialty Pharmacy") was a pharmacy registered in the State of Florida with a principal place of business in Pensacola, Florida. Physician Specialty Pharmacy was registered in the State of Florida as a limited liability company in or about May 2014. Physician Specialty Pharmacy was not a network pharmacy with TRICARE.

3

Physician Specialty Pharmacy had checking accounts ending in 6422 and 6810 at
Gulf Coast Community Bank.

9.      Jay Pharmacy of Jay Florida, Inc. ("Jay Pharmacy") was a pharmacy
registered in the State of Florida with a principal place of business in Jay, Florida.
Jay Pharmacy was originally incorporated in Florida in or about April 1968. Jay
Pharmacy had an NPI number. Jay Pharmacy was a network pharmacy with
TRICARE. In or about February 2015, Physician Specialty Pharmacy purchased
Jay Pharmacy.

10.     J.A.T. was a medical doctor licensed by the State of Georgia. Dr.
J.A.T. was authorized by the Drug Enforcement Administration ("DEA") to
prescribe controlled substances and was assigned DEA registration number ending
in 0568. Dr. J.A.T. had medical practices in the State of Georgia. Dr. J.A.T.
employed defendant **MARIE ANN SMITH** as a billing coordinator for his
medical practices.

11.     Between in or about December 2009, and on or about December 16,
2015, Brad T. Hodgson was employed by Dr. J.A.T. Hodgson did not have a DEA
number and was not licensed to prescribe controlled or non-controlled substances.

12.     Simply Surgical, Inc. ("Simply Surgical") was a corporation
registered in the State of Georgia. Defendant **MICHAEL SCOTT BURTON** was
the chief executive officer, the chief financial officer, and secretary of Simply

4

Surgical. **BURTON** was a marketing representative for Physician Specialty

Pharmacy. On or about September 18, 2010, **BURTON** opened a checking

account ending in 5721 in the name of Simply Surgical at Bank of America on

which **BURTON** had sole signature authority. On or about June 18, 2014,

**BURTON** opened a savings account ending in 2564 in the name of Simply

Surgical at Bank of America on which **BURTON** had sole signature authority.

13. Premier Surgical, Inc. ("Premier Surgical") was a corporation

registered in the State of Florida. Premier Surgical was originally incorporated in

Florida in or about January 2000. Defendant **HEATHER E. POUNDS** was the

president, vice president, secretary, and treasurer of Premier Surgical.

## B. THE CHARGE

Between on or about January 1, 2014, and on or about December 16, 2015,

in the Northern District of Florida, and elsewhere, the defendants,

**MICHAEL SCOTT BURTON,**
**a/k/a "Scott Burton,"**
**MARIE ANN SMITH,**
**BRADLEY D. POUNDS,**
**and**
**HEATHER E. POUNDS,**

did knowingly and willfully conspire, combine, confederate, and agree together

and with other persons to commit offenses against the United States, namely:

5

1.     to execute a scheme to defraud a health care benefit program and to obtain, by means of material false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of a health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347; and

2.     to devise, and intend to devise, a scheme to defraud and for obtaining money and property by means of material false and fraudulent pretenses, representations, and promises, and to cause wire communications to be transmitted in interstate commerce for the purpose of executing such scheme, in violation of Title 18, United States Code, Section 1343.

## C. MANNER AND MEANS

It was part of this conspiracy that:

1.     In or about late 2013 or early 2014, defendant **MICHAEL SCOTT BURTON** contacted Brad T. Hodgson at one of Dr. J.A.T.'s medical offices in reference to writing prescriptions for compounded pain cream, scar cream, and wellness capsules. That is, **BURTON** asked Hodgson if he would be willing to write prescriptions for compounded drugs for individuals whose names **BURTON** and others provided to Hodgson.

6

2.      In or about December 2014, defendant **MICHAEL SCOTT BURTON** contacted defendants **BRADLEY D. POUNDS**, **HEATHER E. POUNDS**, (collectively "the **POUNDS**"), and others, in reference to becoming representatives for Simply Surgical. As part of the agreement, the **POUNDS** and others would provide personal identifying information, identification cards, and insurance cards of TRICARE beneficiaries and other health care beneficiaries in order for prescriptions to be issued in the names of those identified by the **POUNDS** and other representatives. It was agreed that in return, **BURTON** would pay the **POUNDS** and other representatives for the names and information of the beneficiaries they provided.

3.      Thereafter, defendant **MICHAEL SCOTT BURTON** provided defendants **BRADLEY D. POUNDS**, **HEATHER E. POUNDS**, and others, blank patient demographic and insurance forms for the **POUNDS** and other representatives to use. Thereafter, the **POUNDS** obtained the personal identifying information for the following individuals: A.M.C., T.J.W., B.E.W., D.D.K., K.L.S., J.E.S., J.M.L., K.E.B., K.C.M., S.B.D., J.S.R., and S.C.B, caused the patient demographic and insurance forms previously provided by **BURTON** to be completed, and e-mailed the forms and other information to **BURTON**. The **POUNDS** further completed patient demographic and insurance forms for themselves and e-mailed their forms and other information to **BURTON**. The

7

other representatives recruited by **BURTON** also gathered and submitted patient demographic and insurance forms in a manner similar to the **POUNDS**.

4.     Following defendant **MICHAEL SCOTT BURTON**'s receipt of the patient demographic and insurance forms from defendants **BRADLEY D. POUNDS, HEATHER E. POUNDS**, and the other representatives, **BURTON** caused the information to be electronically provided to defendant **MARIE ANNE SMITH** and Brad T. Hodgson at Dr. J.A.T.'s practice.

5.     Brad T. Hodgson and defendant **MARIE ANNE SMITH** then caused prescriptions purportedly signed by Dr. J.A.T., and bearing Dr. J.A.T.'s DEA registration number, to be electronically submitted in interstate commerce via e-mail and fax to pharmacies including, but not limited to, Physician Specialty Pharmacy. Dr. J.A.T. did not authorize or sign the prescriptions Hodgson and **SMITH** submitted. Further, the health care beneficiaries whose information was submitted by defendants **BRADLEY D. POUNDS, HEATHER E. POUNDS**, and the other representatives, were not patients of Dr. J.A.T. or any other health care provider at Dr. J.A.T.'s medical practices. The prescriptions issued were not prescribed by an authorized health care provider and were not medically necessary.

6.     Following receipt of the prescriptions, employees of Physician Specialty Pharmacy manufactured compounded substances and caused other pharmacies to manufacture the substances, and then caused the substances to be

8

shipped to the respective health care beneficiaries. Individuals associated with Physician Specialty Pharmacy then caused claims to be submitted to Express Scripts on behalf of TRICARE and other health care benefit programs for the prescriptions. The claims were submitted using Dr. J.A.T.'s DEA number, and the NPI numbers of Dr. J.A.T, Burklow Pharmacy, Jay Pharmacy, and other TRICARE network pharmacies.

7. Express Scripts, on behalf of TRICARE and other health care benefit programs, processed and adjudicated the claims for the prescriptions. Payments for the prescriptions were then either mailed in the form of a check, or electronically sent to the pharmacies' accounts and accounts of a designated third-party business. Following receipt of the payments, the TRICARE network pharmacy transferred a portion of the money it received to Physician Specialty Pharmacy.

8. By this conduct, defendant **MICHAEL SCOTT BURTON** and others defrauded TRICARE and other health care benefit programs of more than $8,000,000. The conduct of defendants **BRADLEY D. POUNDS** and **HEATHER E. POUNDS** caused TRICARE to be defrauded of a total of approximately $515,755.

9. As a part of the scheme, defendant **MICHAEL SCOTT BURTON** paid defendants **BRADLEY D. POUNDS** and **HEATHER E. POUNDS** and

9

other representatives for the health care beneficiaries' names and other

biographical information they provided to **BURTON**. **BURTON** paid defendant

**MARIE ANN SMITH** and Brad T. Hodgson in cash for their involvement in the

scheme.

All in violation of Title 18, United States Code, Section 1349.

## COUNT TWO

### A. INTRODUCTION

The allegations contained in sections A and C of Count One of this

Indictment are realleged and incorporated as if fully set forth herein.

### B. THE CHARGE

Between on or about January 1, 2014, and on or about December 16, 2015,

in the Northern District of Florida, and elsewhere, the defendant,

### MICHAEL SCOTT BURTON
### a/k/a "Scott Burton,"

did knowingly and willfully combine, conspire, confederate, and agree with other

persons to engage and attempt to engage in a monetary transaction by, through, and

to a financial institution, affecting interstate commerce, in criminally derived

property of a value greater than $10,000, namely, the withdrawal, transfer, and

deposit of funds and monetary instruments, such property having been derived

from a specified unlawful activity, to wit, conspiracy to commit health care fraud

10

and wire fraud, in violation of Title 18, United States Code, Sections 1343, 1347, and 1349, as charged in Count One of this Indictment, all in violation of Title 18, United States Code, Section 1957.

In violation of Title 18, United States Code, Section 1956(h).

## COUNTS THREE THROUGH TWELVE

Between on or about December 19, 2014, and on or about May 22, 2015, in the Northern District of Florida, and elsewhere, the defendant,

### MICHAEL SCOTT BURTON
### a/k/a "Scott Burton,"

did knowingly engage and attempt to engage in a monetary transaction by, through, and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, namely, the withdrawal, transfer, and deposit of funds and monetary instruments, as identified below, such property having been derived from a specified unlawful activity, that is, health care fraud, in violation of Title 18, United States Code, Section 1347, and wire fraud, in violation of Title 18, United States Code, Section 1343:

| Count | Date | Payor Account | Amount |
|-------|------|---------------|--------|
| 3 | 12/19/14 | Gulf Coast Community Bank 6422 | $37,299.09 |
| 4 | 1/8/15 | Gulf Coast Community Bank 6422 | $186,031.93 |
| 5 | 1/26/15 | Gulf Coast Community Bank 6422 | $175,877.11 |

11

| Count | Date | Payor Account | Amount |
|-------|------|---------------|--------|
| 6 | 2/9/15 | Gulf Coast Community Bank 6422 | $183,230.89 |
| 7 | 2/20/15 | Gulf Coast Community Bank 6422 | $237,047.77 |
| 8 | 3/6/15 | Gulf Coast Community Bank 6422 | $134,960.14 |
| 9 | 3/20/15 | Gulf Coast Community Bank 6422 | $82,645.46 |
| 10 | 4/6/15 | Gulf Coast Community Bank 6422 | $276,197.52 |
| 11 | 4/22/15 | Gulf Coast Community Bank 6810 | $271,219.08 |
| 12 | 5/7/15 | Gulf Coast Community Bank 6810 | $271,387.57 |

In violation of Title 18, United States Code, Sections 1957 and 2.

## CRIMINAL FORFEITURE

The allegations contained in Counts One through Twelve of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures to the United States pursuant to the provisions of Title 18, United States Code, Sections 982(a)(1) and 982(a)(7). Upon the conviction of the violations alleged in Counts One through Twelve of this Indictment, the defendants,

**MICHAEL SCOTT BURTON,**
**a/k/a "Scott Burton,"**
**MARIE ANN SMITH,**
**BRADLEY D. POUNDS,**
**and**
**HEATHER E. POUNDS,**

shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 982(a)(1) and 982(a)(7), any and all property, real or personal, involved in the

12

aforementioned offenses and any property traceable to such property; and pursuant

to Title 18, United States Code, Section 982(a)(7), all property, real or personal,

that constitutes or is derived, directly or indirectly, from gross proceeds traceable to

the commission of such offenses including, but not limited to, the aggregate sum of

approximately $2,090,000.

The property subject to forfeiture includes, but is not limited to, the

following:

i.      The real property known as 4559 Northside Drive NW, Sandy

Springs, Georgia, lying and being in Fulton County, Georgia, and more particularly

described in the Official Records at Deed Book 54903, Page 699 of the public

records of Fulton County as follows:

> ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING
> IN LAND LOT 162, OF THE 17TH DISTRICT, OF FULTON
> COUNTY, GEORGIA, BEING LOT 8, SUBDIVISION MRS. LULA
> THOMPSON'S PROPERTY, AS PER PLAT RECORDED IN PLAT
> BOOK 22, PAGE 22, FULTON COUNTY, GEORGIA RECORDS,
> WHICH PLAT IS INCORPORATED HEREIN AND MADE A PART
> HEREOF BY THIS REFERENCE.

ii.     The real property known as 981 Emory Parc Place, Decatur, Georgia,

and more particularly described in the Official Records at Deed Book 12922, Page

108 of the public records of Dekalb County as follows:

> All that tract or parcel of land lying and being in Land Lot 103, 18th
> District, DeKalb County, Georgia, being Lot 36, Unit One, The Villas
> of Emory Parc, as per plat recorded in Plat Book 119, Pages 7-8,

DeKalb County, Georgia, records, which plat is hereby referred to and made a part of this description.

If any of the property described above as being subject to forfeiture pursuant to Counts One through Twelve of the Indictment, as a result of any act or omission of any defendant:

      i.     cannot be located upon the exercise of due diligence;

      ii.    has been transferred or sold to, or deposited with, a third person;

     iii.   has been placed beyond the jurisdiction of this Court;

     iv.   has been substantially diminished in value; or

     v.    has been commingled with other property that cannot be divided without difficulty,

14

the United States shall be entitled to forfeiture of substitute property up to the

value of the property subject to forfeiture under the provisions of Title 21, United

States Code, Section 853(p), which is incorporated by reference in Title 18, United

States Code, Section 982(b)(1).

A TRUE BILL:

FOREPERSON

11 June 2018
DATE

CHRISTOPHER P. CANOVA
United States Attorney

TIFFANY H. EGGERS
Assistant United States Attorney

15